**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT CHARLESTON**

**SHANE COWLEY,**

**Movant**

**v.** **CIVIL ACTION NO. 2:02-0402**
**(Criminal No. 2:99-00170-01)**

**UNITED STATES OF AMERICA,**

**Respondent**

**MEMORANDUM OPINION AND ORDER**

**Pending are the movant's motions (1) pursuant to 28 U.S.C. § 2255, filed on April 29, 2002, (2) to amend pleadings pursuant to Rule 15(c), filed August 6, 2004, and (3) for leave to file additional proposed conclusions of law and memoranda of law, filed February 11, 2005.**

**Regarding the motion to amend, movant is represented by counsel, Donald L. Stennett, an experienced criminal defense attorney who has vigorously prosecuted this case since his appointment. There are a variety of reasons that the motion should be denied. First, the motion was filed pro se, without notice to Mr. Stennett. Second, the motion was filed over two years after this action was instituted and over one month after Mr. Stennett filed objections on the movant's behalf. Third,**

nothing prevented the movant from offering the amendments long ago, such that they could have been considered by the magistrate judge in a timely manner. Finally, the added issues sought to be raised are meritless. The court ORDERS that the motion to amend be, and it hereby is, denied.

The motion for leave to file additional proposed conclusions and memoranda of law hinges upon the applicability to this proceeding of both Blakely v. Washington, 542 U.S. 296 (2000) and United States v. Booker, 125 S.Ct. 738 (2005). Our court of appeals, however, has now foreclosed a Blakely/Booker argument here. Neither of these decisions are available for post-conviction relief sought by federal prisoners whose convictions became final before the decisions in those two cases. United States v. Morris, 429 F.3d 65, 72 (4th Cir. 2005). The movant's conviction became final in 2001. The court, accordingly, ORDERS that the motion for leave to file additional proposed conclusions and memoranda of law be, and it hereby is, denied.

I.

The proposed findings and recommendation contain a careful recitation of the procedural posture and factual development of this action. In summary, the movant, Shane Cowley, seeks to vacate, set aside, or correct the sentence of 45 years imposed after his conviction at trial on the following Counts: (1) Count One - possession of a stolen firearm in violation of 18 U.S.C. §§ 922(j) and 924(a)(2); (2) Count Two - attempted possession with intent to distribute methamphetamine and aiding and abetting in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2; (3) Count Three - using and carrying a firearm during and in relation to a drug trafficking crime and aiding and abetting in violation of 18 U.S.C. §§ 924(c)(1) and 2; and (4) Count Four - witness tampering in violation of 18 U.S.C. § 1512(b). Movant's conviction and sentence were affirmed on direct appeal. United States v. Cowley, No. 00-4612, 2001 WL 434632 (4th Cir. Apr. 30, 2001). He did not petition for discretionary review by the Supreme Court.

Movant contended originally that his attorney provided constitutionally deficient representation in the following respects: (1) failing to investigate, and to call at trial,

various witnesses identified by the movant; (2) failing to object to a putative Brady violation arising out of the government's failure to disclose the prior grand jury testimony of potential witness Larry Cochran; and (3) failing to challenge on appeal the sufficiency of the evidence presented in support of Count Two.

This case was referred to United States Magistrate Judge Mary E. Stanley on April 29, 2002. The magistrate judge conducted an evidentiary hearing on March 11, 2003, and directed the parties to file proposed findings of fact and conclusions of law. The court received the magistrate judge's proposed findings and recommendation on May 23, 2003, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B). On June 30, 2003, movant, by counsel, objected.

Movant's specific objections are as follows: (1) the choice of an alibi defense pursued by counsel was flawed because the chosen alibi was not airtight, (2) counsel's decision to forego cross examination of some government witnesses prejudiced movant's defense, (3) evidence from those witnesses not called at trial, who would have allegedly testified that Overton Wayne Pauley ostensibly admitted to the killing of Jeff Stone, would not necessarily have been barred under Federal Rule of Evidence 801, (4) movant was not adequately prepared to weather cross

examination when he took the stand in his own defense, and (5) the magistrate judge erred in not addressing the evidentiary hearing testimony of Betty Harper, who asserted that the trial testimony of her daughter, Beverly Oldham, was false.

## II.

### A. The Governing Standard

The standard governing ineffective assistance claims was announced in Strickland v. Washington, 466 U.S. 668 (1984). Strickland requires a two-part showing as follows: (1) counsel's performance must have fallen "below an objective standard of reasonableness," and (2) that "deficient performance" must have "prejudiced the defense." Id. at 687-88. The deference afforded trial counsel under Strickland is "appropriately extensive, because appellate courts are poorly suited to second-guess trial strategy and on-the-fly decisions of trial counsel." Humphries v. Ozmint, 397 F.3d 206, 234 (4th Cir. 2005)(citing Strickland, 466 U.S. at 689 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the

presumption that, under the circumstances, the challenged action might be considered sound trial strategy.")).

B. Grounds One, Two, and Three

Grounds one, two, and three merge together somewhat and are thus discussed in tandem. First, regarding the alibi defense, movant essentially contends that since the times and his travels on the night in question were not airtight in his favor, the alibi defense should not have been pursued or, alternatively, should have been pursued together with the theory that Pauley or others murdered Stone. First, few alibi defenses are beyond question. Lacking the benefit of hindsight, counsel chose what he deemed to be the best defense based upon all available alternatives. The fact that his well-considered choice failed to carry the day after meeting the government's contrary evidence is simply not the stuff of which successful Strickland claims are made. The choice of the alibi defense did not contravene Strickland.

Second, movant contends that defense counsel erred in not pursuing an alternative strategy, namely one dependent upon the alleged inculpatory admissions of convicted-felon Overton

**Wayne Pauley. Once defense counsel learned from Pauley's lawyer, however, that Pauley would assert his Fifth Amendment privilege against testifying at movant's trial, the defense was practically decimated. To successfully challenge counsel's decision on Sixth Amendment grounds, the movant would, effectively, be required to show, inter alia, that (1) the proffered, second-hand witness testimony concerning Pauley's putative admissions would not have been excluded on hearsay grounds, and (2) the testimony of these jailhouse informants would have sufficiently impressed the jury. As noted by the magistrate judge, the proposed testimony would have met with successful hearsay objections. Second, the proffered witnesses, as stated by defense counsel at the evidentiary hearing, "jingled when they walked" and likely would not have commanded the jury's trust. (Evid. Hrg. Trans. at 134).**

**Of greater moment though for both Strickland prongs is the fact that these witnesses' credibility would have most certainly faced searing government cross examination, unlike those witnesses responsible for helping establish the alibi defense pursued at trial. Defense counsel went to great pains to craft that theory, which was dependent not upon shaky informant testimony, but rather upon disinterested witnesses who included (1) "an older gentleman" who was "authoritative" and did not**

"have an ax to grind[,]" and (2) "a nurse at one of the local hospitals. . . ." (Evid. Hrg. Trans. at 123). Had defense counsel pursued, along with the alibi theory, the alternate approach now espoused in hindsight by the movant, the strength of the former would most certainly have been diminished by the cross examination of the jailhouse informants on the latter. Pursuing both theories would also have robbed the defense of a very effective tool used during closing argument. In his final address to the jury, defense counsel noted quite eloquently that the government's case depended greatly upon those, again, who "jingled when they walk[ed.]" Had he employed the similar approach now advocated by the movant, this significant argumentative tool would have been lost.

Regarding the failure to cross examine certain government witnesses, one confronts, again, Strickland's strategy limiter. In Huffington v. Nuth, 140 F.3d 572, 582 (4th Cir. 1998), the defendant contended that his lawyer's failure to cross-examine the prosecution's bullet composition expert amounted to ineffective assistance. The court of appeals disagreed, stating as follows:

> The fundamental weakness in this argument lies in trial counsel's testimony that he chose not to attack this forensic evidence for strategic reasons. As the state post-conviction court found, his trial strategy

> involved asserting that Huffington was not even present during the commission of the crimes. In counsel's view, an attack on the reliability of the bullet composition testimony did not fit that strategy. This tactical decision, viewed from the vantage point of trial and not from hindsight, does not fall outside the wide range of reasonable discretion afforded to counsel.

Id. at 582 (emphasis supplied).

Like Nuth, movant contends counsel erred in not pursuing cross examination of certain government witnesses. Also akin to Nuth though is the fact that the alibi strategy depended upon movant's absence during the commission of the crime. Further, a number of government witnesses testified to, among other things, movant's claims to them that he murdered Jeff Stone. Defense counsel's strategy, however, which he made much of during his closing argument, was to essentially concede the truthfulness of those statements, but then to paint them as simply misguided braggadocio by one who was both (1) actively using controlled substances, and (2) bent on enhancing his reputation in the eyes of those who might be impressed with such a dramatic misdeed. These considerations, along with counsel's stated desire to avoid a perilous "smorgasbord defense[,]" (Evid. Hrg. Trans. at 122), makes clear that his choice of strategy does not implicate Strickland.

For the foregoing reasons, grounds one through three are not meritorious.

C. Ground Four

Movant next contends that his lawyer did not adequately prepare him for cross examination. The movant and his lawyer were at odds with each other on this point during the evidentiary hearing. Movant contended that his lawyer never prepared him to take the stand, first raising the subject at counsel table towards the close of the defense case. (Evid. Hrg. Trans. at 9). His lawyer, however, stated that he went over questions with the movant more than once, dating back to jail visits. (Id. at 125). The difference is that the movant, unlike his lawyer, testified inconsistently about what transpired at trial on this point. For instance, at page 9 of his evidentiary hearing testimony, movant stated that he responded equivocally with the statement "'I guess'" when his lawyer asked him if he felt like taking the stand. (Id. at 9). Later in his evidentiary hearing testimony, however, he stated that he responded with an unambiguous "Yeah" to his lawyer's same inquiry. Under these circumstances, the court credits his lawyer's consistent account.

For the foregoing reasons, ground four is not meritorious.

D. Ground Five

Movant notes in his final objection that the magistrate judge said nothing about the testimony of Betty Harper. As noted in the proposed findings and recommendation, however, the magistrate judge noted that (1) Beverly Oldham, a trial witness and Harper's daughter, testified at both trials that she saw the movant with a gun similar to that described by the victim's son as the one used to kill his father, and (2) Harper recounted that, prior to the second trial, Oldham tearfully recanted her initial trial testimony to her, testimony which Oldham ostensibly claimed was a product of government coaching and her fear that she might lose her children if she did not cooperate. This ground is meritless.

First, Harper's testimony would likely have faced a stiff hearsay challenge. Second, and of greater importance, the defendant must show under Strickland's "prejudice" prong that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." Strickland, 466 U.S. at 694. In view of the strength, and multifaceted nature, of the government's case, which included the testimony of multiple witnesses that movant confessed to the crime, he cannot make the prejudice showing based upon the mere absence of Harper's testimony.

For the foregoing reasons, ground five is not meritorious. Further, for all the reasons discussed above, along with those found in the proposed findings and recommendation of the magistrate judge, which are hereby adopted and incorporated herein, the court concludes that the section 2255 motion should be denied.[1]

---

[1]Movant raised other grounds in his motion that were not preserved in his objections. The court finds these grounds, as well, lack merit. The strongest of these asserted grounds is the trial testimony of the victim's son, Michael Stone, who was present during his father's murder. Stone testified at trial that one of the people involved in the attack spoke a foreign language. He also told investigators during two interviews that one of the assailants spoke Spanish.

Movant contends that, at the time the victim was murdered, another group of men, associated with Pauley, was robbing drug dealers in the Charleston area. One member of the group, a foreign national, was known to speak his native language, apparently not Spanish, at times during these robberies. The movant contends his lawyer failed to bring up the existence of the competing group to the jury.

This argument had some facial appeal prior to the evidentiary hearing. As noted at that hearing by the assistant United States Attorney who tried the case, however, "Mr. Cowley knows Spanish . . . ." (Evid. Hrg. Trans. at 109). Had defense counsel made much of Stone's testimony and developed the line of

(continued...)

III.

Based upon the foregoing discussion, the court ORDERS that the section 2255 motion be, and it hereby is, denied.

The movant has sixty days from the entry of this order in which to appeal the dismissal of his § 2255 motion and other rulings. Failure within sixty days from this date to file with the Clerk of this court a notice of appeal of this order and the Judgment thereon or to file with the Clerk of the United States Court of Appeals for the Fourth Circuit a request for a

---

[1](...continued)
evidence now proferred by the movant in hindsight, the government might have met that proof with rebuttal testimony concerning Cowley's bilingual abilities, severely prejudicing his case in the process. Further, by avoiding the issue during the testimony, the defense was able to make the following, compelling closing argument:

> [Michael Stone] talks about the people or at least one of them speaking Spanish. Remember that, speaking Spanish. And no witness in this case has established or testified to you that Mr. Cowley, and certainly not this other fellow that the government claims did this who I suppose has never been charged, neither of those individuals are alleged to have spoken Spanish or anything like that. But that is the culprit that they should be looking for is the two individuals that -- or the one of which particularly that was speaking Spanish that this young man heard and told those policemen about the day after and a week after this crime occurred.

(Trial Trans. at 480).

**certificate of appealability thereof will render this order and the Judgment thereon final and unappealable.**

**The Clerk is directed to forward copies of this written opinion and order to the movant, all counsel of record, and the United States Magistrate Judge.**

**ENTER: March 20, 2006**

John T. Copenhaver, Jr.
United States District Judge